We'll move to the next case on the calendar, Liberato v. United States. Whenever you're ready, Counsel. Thank you, Your Honor. This case involves an illegal reentry charge where the defendant was convicted after the prosecution put on some evidence but failed to put on any evidence regarding the observations by the first officer that arrested the defendant. It is clear, however, that the arrest took place right at the border fence. In fact, there's a photograph of the arrested – there was 26 undocumented aliens that were arrested right near a fence. And the defense, after the case – after the prosecution presented its case, the defense moved for judgment of acquittal on the basis that the government had not shown that there was, in fact, an essential element which had not been proved, and that was the absence of – excuse me – continual surveillance by the government. There was an officer who did arrive there after these – In applying the appropriate test, we can look at direct and circumstantial evidence, right? Yes. And the question is whether one rational juror could find the defendant guilty beyond a reasonable doubt, right? Correct. Okay, so for example, I'm looking at – on my page it says – I guess it's page 216 of the excerpts when the jury had a question for Agent Mondragon. Can you clarify whether or not the group of people the defendant was a part of was in view of a security camera? No. At 198, where's the nearest port of entry? 20 miles further east, 90 miles further west, ER 191. Is the specific area where Mr. Liberato encountered – is that area amenable or susceptible or under surveillance by a camera? No. Why isn't that evidence, as the district court found, from which a rational juror could find that there was an incident when the defendant was not being observed? Well, because there was an officer who actually was there and did observe and arrested 26 people right at the border. And that is a witness that the government never presented. But, I mean, obviously he was susceptible to observation at the moment he was arrested, right? Because somebody would have had to have been looking at him when they arrested him, right? Yes. And it doesn't necessarily have to be by camera. Right. But how does that deal with every other second? Well, if the prosecution in a case like this, if the prosecution only brings a witness that shows up after the defendant has been arrested at the border, and that witness testifies that the defendant was seen in the United States and there's no other evidence about how he entered, then the government can easily manipulate, as they did in this case, we contend, the evidence to simply show that even if there was someone who did watch him in and he was under constant surveillance, they don't have to prove that element, which is, as I say, an element of the offense. Wasn't there another officer who testified that they were seen actually on camera crossing? I don't – there was no officer that testified that. Mondragon testified that he had – that they were seen by cameras when they crossed, and he said yes. He was referring to the fact that he had seen the reports, and in the reports it was referenced to a camera that had apparently observed these people. But he doesn't say whether he observed them after they had entered or whether he observed them while they were still in Mexico. Was it clear that they – the camera was observing this group, or was it – could it have been another group? It's not clear. There was a couple of groups, or actually I think altogether three groups, that were being observed that morning or that were at least approached by Border Patrol. The district judge, in denying your motion, said, Liberato, after he crossed the border, the evidence does not necessitate nor completely exclude either policy – I'm sorry, either possibility. The government's account was incomplete, but it could permit a rational juror to infer freedom from official restraint. Liberato presented no evidence to counter this inference. Obviously, your client doesn't have any obligation to present evidence, but we judged the evidence that was actually presented. I'm having trouble understanding why the district court was wrong here. Well, the reason we think the court was wrong is because the prosecution, as I say, can manipulate the evidence in order to bring witnesses that are only approaching the defendants after they've already entered into the United States. And let's argue that these defendants were found in the United States. The person who could have provided the information as to what and how they entered was Officer Lostra, who was not presented. The government's response to that, and it doesn't really have to do with the sufficiency question, is you could have called him. Well, that's true. We could have called him, but it was the government's burden to prove, as we cited in our brief, that the defendant was not under constant surveillance. One other thing that I wondered about is that Mondragon said that Lostra had encountered them when he was coming to help Mondragon with another group. That's completely hearsay, right? But it was never objected to. It is hearsay, and he also testified that he knew nothing about the way they entered or how they or what it was that Lostra observed. But he never objected to that. There was no objection to that as hearsay, which I found very odd because there were other hearsay objections. So it seems to be in the record as such. I mean, it doesn't say where he encountered them. He could have encountered them as they came in, but it doesn't say. And that was our contention, that he was going to testify that Lostra said that he observed them as they came in and that they were under constant surveillance. And the only other possible shred of evidence from the government, it seems to me, is that Mondragon said something kind of vague about he didn't see any sign that they had knocked down anything right where they came in, something like that, right where he saw them. So the notion being that they must have come in somewhere else. Well, it is vague, and he does testify that he did not, wasn't aware of where they came in because he got there after they were already lined up against the border fence by Lostra and that they were being processed. And when asked, he actually testified he had no idea or had no evidence about or testimony about how and when they came in. And Lostra would have been, as we contend, the natural witness to have testified about that, but the prosecution didn't call him. Didn't Mondragon also testify that it's a typical practice to move a group to the border for processing? That if they were found, say, 100 yards in, they might be moved over to the border to make it easier for processing? He does testify. But he didn't know in this case. But he doesn't say that that's what happened in this case. Was there any objection to that testimony? To Mondragon's testimony? No. No, I didn't object to that. But as I say, Lostra would have been the eyewitness and would have been the natural witness to testify for the prosecution on that point. What about comparing the facts here to those in the two cases that the government primarily relies upon, which I think are Bella Bahana and Castellanos? How do the facts here compare to that? Well, I think both of those cases clearly involve arrests or the observations that were made of undocumented aliens after they had entered. In one case, I think it was at least 100 yards. Yeah, it was a mile. Another one was a mile, yes. And as I say, in this case there wasn't any testimony about where Lostra first observed these people, whether they were right at the border, and whether he observed them coming in. And that's where the government's failure, we contend, in failing to show that they weren't under constant surveillance, which is a requirement and an element of the offense. Counsel, you're out of time, but we'll give you a little bit of time for rebuttal. Thank you. Good morning, Your Honor. May it please the Court. I'm Chris Cavanias from the District of Arizona representing the United States. As a couple of members of this Court noted, the question is what evidence was presented. And the evidence that was ---- Exactly what evidence was there. Excuse me? The evidence is at least exceedingly sparse. So what is it? Actually, I would respectfully disagree with that. We don't always have ---- It's exceedingly sparse. Well, here's what they had. And I believe that the district court properly analyzed what a jury could reasonably infer. As Judge Bennett noted, between direct and circumstantial evidence, you can also infer reasonable conclusions. And a defendant can be shown, if someone has snuck across the border, this Court's cases, say the lack of official restraint can be shown. If there isn't continuous, uninterrupted, constant surveillance from the moment they enter until the moment they're apprehended. Or there could also be freedom from official restraint if they could find that the first time the government saw this person, they evaded government observation while crossing the border. So we have one of two ways that this could be proven. And I would submit we had both. Here you have Agent Mondragon, as Judge Bennett, I believe, noted, specifically stating, when asked, were they in area where the camera could be? He said no, they were not in view of any camera. And he explained this for the jury, that there's topography and terrain that goes up and down, there's mountains, there's vegetation, and the camera was not able to grasp where that location was. At that point where he saw them. Excuse me? At the point at which he saw them. And that would be in that area, in that spot. Right. So what that means, though, is that can support ---- There was another person who testified specifically that they were seen on the camera. Well, this is ----  If I can touch on that, that point, Agent Hall was asked, and the defendant tried multiple times to elicit hearsay from Agent Hall about Agent Lastra. Twice, I think two or three times, that was sustained. Well, everybody's trying to elicit hearsay about Lastra because Lastra's not there. And, in fact, the key testimony about Lastra was hearsay. Why it wasn't objected to, I don't know. Which is that he encountered them on the way ---- The word was encountered. I don't know where that came from. On the way to ---- Mondragon testified to that. Mondragon. And that's complete hearsay. Well, he's relaying why he went, because he had his group of aliens, and then Agent Lastra's coming, and he reports that Agent Lastra ran into this group of aliens. Right. So there was no objection. That is in the record. And it's reasonable for the jury to find that if somebody's running into a group of aliens, that those folks are already in the United States. Why? Excuse me? Why couldn't he run into them as they're landing, as they're coming in? Well, you're asking, I think, the Court to examine it from the perspective of what would support the defendant's view. No. I'm asking what evidence is there that he encountered them somewhere other than at the border. Well, the defendant is saying they were found at the fence. I would respectfully submit that the evidence supports they were found north of the  And Mondragon testified when he arrived they were against the fence, but he didn't know where they were when he arrived. But one of the things that's important here, too ---- But you didn't answer my question. I mean, what evidence is there that Lastra did not see them from the point they arrived? Your Honor, I would respectfully submit that that question is something this Court said it doesn't look at. And if I can just explain why. But, counsel, whether that's true or not, I would suggest you answer Judge Berzon's  Then can you repeat that question? I just want to make sure I have it right. What evidence is there that Lastra, when he encountered them, was not at the border? Well, he must have been near the border, it sounds like. Right. Yes. But we don't have direct evidence that he saw anybody cross. Exactly. Exactly. But the burden is on the government.  So what evidence is there that he didn't? But you don't need that. And that's what I wanted to say.  Because this Court specifically addressed that in Castellanos-Garcia. This Court refused to reverse a 1326 found in crime in the absence of contrary evidence, and this gets to one of the other judges' points. The Court said that the contrary rule would be unworkable, even absurd, noting that the government need not prove how the defendant entered or, quote, bring in evidence that no government agent who might have been somewhere in the area of the route saw him and kept him under surveillance, end quote, that Castellanos offered only, quote, free-floating speculation that he might have been observed the whole time. And that's what we have here. We have the defendant asking. This Court refused. But he was they were found a mile away. We don't know exactly where he was located when Agent- But in Castellanos, they were found. He didn't find the breach point. And that's important, too, Your Honor, because if you can't find the breach point nearby, then if a best-case scenario is- That was a very fuzzy testimony. It was- He looked briefly. He didn't see it. That was about it. But the jury is- He wasn't walking around looking at it. But the totality of circumstances and the evidence is viewed in the light most favorable to sustaining the jury's verdict in the view of the government. And that's where I also want to note the district court made a specific factual finding that the defendant knew the month before trial that the government was not going to call Agent Lostra. The defense could have called Agent Lostra. The defense argued to the jury, hey, the government hasn't called Agent Lostra. What Mondragon said about how they came in, it's hard to tell how they came in. Typically-  This is what Mondragon said about how they came in. It's hard to tell how they came in. But typically they will either cut a section of the fence or they will break open the door. But often then they'll close it up and sometimes they'll try to hide it from us so we can outlocate it and keep it going or it will be out in the open. And then so, all right, did you look along the wall for the place where the people had entered? I probably did, and if I didn't report it, it's probably because I didn't find where the breach is. That's not- And that was in response to- But he had already testified that they often cover up the breach. So it doesn't prevent- Actually, I respectfully submit that that fact is actually important, because if the argument is that Lostra shows up and he sees them crossing, then the fact that there's no breach nearby suggests that they've traveled a ways before they were apprehended.  He said he probably looked, and if I didn't report it, it's probably because I didn't find it where the breach was. But the jury's entitled to infer from that that he didn't find a breach right there where he was, because the defendant's argument sort of depends on Agent Lostra being there and seeing them cross. Now, again, he could have presented this evidence. The jury's- If we agree with this, aren't we, if we allow this to be an adequate testimony, aren't we encouraging the government to do in every case what it did here, which is not have the person testify who actually knows what happened? No. No, you're not. Why not? Because you have multiple cases where evidence is presented by other. You don't always have to present the first agent, and that's what this Court was talking about and what the district court found, that you don't have to always present how the person entered. You're also, this is a found-in case. He was- But also, isn't part of your argument what you said a couple of minutes ago, and I don't see that this goes to the standard of the evidence, but the defendant knew. So the defendant knew that the guy wasn't going to be testifying. Yes. And could have called him. Yes. And they actually made that argument to the jury. They said, hey, the gov hasn't called, you know, Lostra, and the government responded, well, he has the power, you know, even though it isn't the burden, and he could have presented him, too. And the question is, do you have enough, knowing that Agent Mondragon couldn't see, said the cameras couldn't see that location. That is so important, because you can show lack of official restraint, not just by finding somebody north of the border, but by showing that they were not under constant, continuous surveillance from entry to arrest. But also on this policy issue, if the government lets a defendant know they're not going to call somebody, the defendant is free to call them or to seek a postponement to get a subpoena, right? Absolutely. They can. And that's the thing. The government chooses to prove its case. Sometimes they don't call every witness, and there could be reasons for that. But the question is what evidence was presented, and was it sufficient. And I would say that this Court would have to overlook an awful lot of its cases in order to reverse. It would have to overlook Castellanos Garcia, Bayo Bejina, Ramos Godinez, Cruz Escoto, Villegas Gutierrez. But, Counsel, all we know for sure is that when the agent who testified, Mondragon, encountered them, they were standing at the border. What more do we know? We know that they were north of the border. We know that no cameras were able to see into that spot where they were located so that we know that the jury could reasonably conclude that there was no constant, continuous surveillance from the time that they entered to the time that they were arrested. But those are things that we don't know. What we know is they were at the border, standing at the border, when Mondragon showed up. And he was the one who testified to that. Yes. And we know more than that, though. We know about the fact that they can't see with the cameras in that location. And that's really critical. Sometimes there isn't that testimony. Sometimes it's unclear. But here we had an agent who's right there, 20 years, border patrol agent, worked in the Ajo Station for three years, talked about how there's nothing but desert out here. And it's a place where people cross who want to avoid being apprehended. And, you know, the jury's – Lastre could have cleared up probably every ambiguity in this case, right? I don't know about every ambiguity. And I don't think that – let's pretend for the sake of argument that the government had called Agent Lastre. And Agent Lastre at least said something about, oh, I found him north – or, you know, there's nothing to suggest he wouldn't have said anything different than what Mondragon reported that he ran into. So there's so much of this free-floating speculation that in Hernandez-Castellanos this Court refused to adopt, as well as in Bella-Bahena, because this Court looks at what was presented. And it specifically said that the government does not have to sort of disprove – I see I'm in the red. Can I finish that thought? You can finish that sentence. You bet. That the government does not have to prove how the defendant entered or, quote, bring in evidence that no government agent who might have been somewhere in the We have two ways to prove it. We actually had them both, and either one would be okay.  Thank you, Your Honor. We'd ask the Court to affirm. All right. We'll give you two minutes for rebuttal. Just briefly, I think the concern about trying to show the absence of observation or continuous observation is that in a lot of cases you have people that are coming into the United States, and they're trying to hide. They're trying to avoid Border Patrol agents. But I do invite the Court's attention to Mondragon's testimony, where he said that he arrived and that all of these people were just standing around. They were not armed. They were not resisting. They were not trying to run. They weren't trying to hide. They were very cooperative. And he ends it by saying, I don't know how or when they entered the United States. So if the question or if the issue or the reason for having the continuous observation requirement is because people are trying to enter the United States and not be seen and not be detained by Border Patrol, this certainly doesn't show that that's what happened in this instance. And for those reasons, I'd ask the Court to reverse. All right. Thank you. We thank counsel for their arguments, and the case just argued will be submitted.
judges: BERZON, BENNETT, Tunheim